IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-585-D

OSVALDO FIGUEROA,                    )
                                     )
                    Plaintiff,       )
                                     )
          v.                         )          **ORDER**
                                     )
BUTTERBALL, LLC,                     )
                                     )
                    Defendant.       )

On November 4, 2020, Osvaldo Figueroa ("Figueroa" or "plaintiff") filed a complaint against

Butterball, LLC ("Butterball" or "defendant") alleging claims under the Fair Labor Standards Act,

29 U.S.C. §§ 201 et seq. ("FLSA"), the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-

25.1 et seq. ("NCWHA"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq.

("ADA"), and for North Carolina common law wrongful discharge [D.E. 1]. On December 31,

2020, Butterball moved to dismiss Figueroa's ADA and common law wrongful discharge claims

[D.E. 11] and filed a memorandum in support [D.E. 12]. On January 20, 2021, Figueroa filed an

amended complaint omitting his ADA and common law wrongful discharge claims [D.E. 13], and

responded to Butterball's partial motion to dismiss [D.E. 14].[1] On March 2, 2021, Figueroa filed

a notice of consent for Francisco Vasquez to join the suit as an opt-in plaintiff [D.E. 16]. On March

5, 2021, Butterball moved to dismiss Figueroa's amended complaint and to strike Figueroa's

collective action and class action allegations, or in the alternative, for Figueroa to provide a more

definitive statement [D.E. 17], and filed an exhibit [D.E. 17-1] and a memorandum in support [D.E.

---

[1] Because Figueroa omitted the disputed claims in his amended complaint [D.E. 13], the court
denies Butterball's partial motion to dismiss as moot. See [D.E. 11, 14].

18]. On March 24, 2021, Figueroa responded in opposition [D.E. 19]. On April 7, 2021, Butterball replied [D.E. 20].

As explained below, the court grants Butterball's motion to dismiss and dismisses Figueroa's FLSA and NCWHA claims for failure to state a claim. The court denies Butterball's motion to strike as moot.

I.

Butterball, a turkey product producer, is a limited liability corporation with its principal place of business in Garner, North Carolina. See Am. Compl. [D.E. 13] ¶¶ 20–21. Figueroa is a resident of Clinton, North Carolina. See id. ¶ 19. Figueroa worked for Butterball as a poultry loader/catcher at Butterball's processing plant in Warsaw, North Carolina, from approximately May 8, 2017, to May 2019. See id. ¶¶ 19, 32–34. As a loader/catcher, Figueroa corralled, caught, and loaded turkeys onto trucks to be transported for slaughter. See id. ¶¶ 33, 36–38. Figueroa's work was "unskilled, repetitive, and rote." Id. at ¶ 37. He "did not receive specialized training." Id. He had no authority over the hiring and firing of other employees, and he did not manage other employees. See id. ¶¶ 40–41.

Figueroa typically worked six days per week, from 6:30 p.m. until 9:30 a.m. the next day. See id. ¶ 42. Approximately once a month, the machines the loaders/catchers used would break, and Figueroa would work until 2:00 or 3:00 p.m. See id. Butterball provided "a one-hour, uninterrupted lunch break," but "the lunch break depended on the general pace of the production line." Id. ¶ 43. Figueroa worked approximately 90 hours per week. See id. ¶ 44.

When Butterball hired Figueroa, Butterball informed Figueroa that "he would be paid on a piece-rate basis at a rate of $12 per truck load of turkeys." Id. ¶¶ 48–49. During the hiring process, both Figueroa's manager and a representative from human resources told Figueroa that he would be

2

paid overtime for any hours worked in excess of 40 per week. See id. ¶¶ 48–49, 51. Butterball required Figueroa to track his daily hours worked, and Butterball reported Figueroa's hourly rate on Figueroa's paystub. See id. ¶¶ 51–52. Butterball paid Figueroa on a weekly basis. See id. ¶ 47.

Figueroa alleges that Butterball treated him like an hourly employee. See id. ¶¶ 50–51. Figueroa alleges that Butterball systemically under-calculated Figueroa's wages, and paid him less than his promised hourly rate. See id. ¶¶ 54–56. Figueroa also alleges that he "should have been paid time and one-half for all hours worked over 40 per week," and that Butterball failed to pay Figueroa an overtime premium. Id. ¶¶ 52, 54.

Figueroa's paystub for January 15, 2018, to January 21, 2018, indicates that he worked 66.18 hours and earned a gross total of $1,382.15 for the pay period. See [D.E. 17-1]. Figueroa earned $1,147.62 in "LoadTrip" pay and $234.53 in "OT Hours." Id. The paystub also lists a "Rate" of "18.54," but it does not further define the "Rate." Id.

Figueroa alleges that Butterball failed to pay proper overtime wages under the FLSA. See Am. Compl. ¶¶ 80–95. Figueroa brings his FLSA claim as a collective action on behalf of himself and all similarly situated employees. See id. ¶¶ 60–69. Figueroa also brings a claim pursuant to the NCWHA. See id. ¶¶ 105–17. Figueroa brings his NCWHA claim as a class action on behalf of himself and all similarly situated employees. See id. ¶¶ 70–79. Figueroa seeks collective action certification, class action certification, and monetary damages. See id. at 21–22.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule

3

12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

4

Defendant's motion to dismiss requires the court to consider Figueroa's North Carolina state law claim. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from the Supreme Court of North Carolina, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

## A.

Figueroa alleges that Butterball violated the FLSA by failing to pay him and other loaders/catchers proper overtime wages. See Am. Compl. ¶¶ 80–95. Congress enacted the FLSA to "eliminate . . . substandard labor conditions." Powell v. U.S. Cartridge Co., 339 U.S. 497, 510

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013).

5

(1950), superseded on other grounds by statute, e.g., Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, 80 Stat. 830; see Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981), overruled on other grounds, Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991); Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706–07 (1945), superseded on other grounds by statute, Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84; Shaliehsabou v. Hebrew Home of Greater Wash., Inc., 363 F.3d 299, 304 (4th Cir. 2004); Gaxiola v. Williams Seafood of Arapahoe, Inc., 776 F. Supp. 2d 117, 124 (E.D.N.C. 2011). Under the FLSA, a covered employer must pay a covered employee at least minimum wage for the hours worked during each workweek. See 29 U.S.C. § 206; see Gaxiola, 776 F. Supp. 2d at 124. The FLSA applies to all non-exempt employees See 29 U.S.C. § 203(e).

The FLSA "does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, or other basis." 29 C.F.R. § 778.109 (emphasis added). In a piece-rate system, a worker is paid by the job or by the product. See Hall v. DIRECTV, LLC, 846 F.3d 757, 773 (4th Cir. 2017); Alvarado v. Corp. Cleaning Servs., Inc., 782 F.3d 365, 367 (7th Cir. 2015) ("In a piece-rate system a worker is paid by the item produced by him: so much per scarf, for example, if his job is to make scarves."). Piece-rate compensation is lawful when it is "pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work." 29 U.S.C. § 207(g). The agreement or understanding need not be in writing. See Amador v. Guardian Installed Servs. Inc., 575 F. Supp. 2d 924, 929 (N.D. Ill. 2008); cf. Griffin v. Wake Cnty., 142 F.3d 712, 716 (4th Cir. 1998). However, the parties must agree that the employer is compensating the employee for all hours worked, including nonproductive hours. The employer must also comply with the FLSA's overtime provisions. See 29 C.F.R. §§ 778.111(a), 778.318; Hall, 846 F.3d at 773.

6

The FLSA requires a covered employer to pay a covered employee one and one-half times the employee's regular rate for all hours worked in excess of 40 hours per week. See 29 U.S.C. § 207(a); Roy v. Cnty. of Lexington, 141 F.3d 533, 538 (4th Cir. 1998); Turner v. BFI Waste Servs., LLC, 268 F. Supp. 3d 831, 836 (D.S.C. 2017). Piece-rate earnings must be converted to an hourly rate to determine whether the earnings comply with overtime pay requirements. See 29 C.F.R. § 778.111(a); see also Turner, 268 F. Supp. 3d at 836 ("A non-exempt employee's 'regular rate' of pay provides the basis for calculation of his overtime rate."). The FLSA regulations state:

> When an employee is employed on a piece-rate basis, the regular hourly rate of pay is computed by adding together total earnings for the workweek from piece rates and all other sources (such as production bonuses) and any sums paid for waiting time or other hours worked (except statutory exclusions). This sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the pieceworker's "regular rate" for that week. For overtime work the pieceworker is entitled to be paid, in addition to the total weekly earnings at this regular rate for all hours worked, a sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week.

29 C.F.R. § 778.111(a); see Turner, 268 F. Supp. 3d at 836–37; Alston v. DIRECTV, Inc., 254 F. Supp. 3d 765, 792 (D.S.C. 2017); see also 29 U.S.C. § 207(g); Pest v. Bridal Works of N.Y., Inc., 268 F. Supp. 3d 413, 427–30 (E.D.N.Y. 2017). The FLSA regulations illustrate how to apply this compensation method:

> [F]or example, if the employee has worked 50 hours and has earned $491 at piece rates for 46 hours of productive work and in addition has been compensated at $8.00 an hour for 4 hours of waiting time, the total compensation, $523.00, must be divided by the total hours of work, 50, to arrive at the regular hourly rate of pay—$10.46. For the 10 hours of overtime the employee is entitled to additional compensation of $52.30 (10 hours at $5.23). For the week's work the employee is thus entitled to a total of $575.30 (which is equivalent to 40 hours at $10.46 plus 10 overtime hours at $15.69).

29 C.F.R. § 778.111(a).

Butterball contends that it properly compensated Figueroa on a piece-rate system including

7

an overtime premium. See [D.E. 18] 9–11. Butterball also contends that Figueroa does not plausibly allege that Butterball improperly calculated Figueroa's piece-rate compensation or failed to pay him overtime. See id. In support, Butterball cites Figueroa's paystub. See id. Figueroa responds that Butterball improperly calculated his wages. See [D.E. 19] 16–17. Figueroa also contends that the paystub does not show piece-rate compensation but constitutes a promise to pay an hourly rate. See id. at 14, 17–18.

"To assert a claim for overtime compensation pursuant to 29 U.S.C. § 207, a plaintiff must plead (1) that he worked overtime hours without compensation; and (2) that the employer knew or should have known that he worked overtime but failed to compensate him for it." Butler v. DirectSat USA, LLC, 800 F. Supp. 2d 662, 667 (D. Md. 2011) (quotation omitted); see Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986). "[P]laintiffs seeking to overcome a motion to dismiss must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay." Hall, 846 F.3d at 777. "[T]o state a plausible FLSA overtime claim, plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." Id. (quotation omitted); see Williams v. Imeni, No. 5:16-CV-516-FL, 2017 WL 2266849, at *3 (E.D.N.C. May 23, 2017) (unpublished). "A plaintiff may meet this initial standard by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." Hall, 846 F.3d at 777 (quotation and emphasis omitted); see Acosta v. Ararat Imp. & Exp. Co., 378 F. Supp. 3d 443, 447 (E.D.N.C. 2019); Chado v. Nat'l Auto Inspections, LLC, CV No. JKB-17-2945, 2018 WL 6198722, at *2–4 (D. Md. Nov. 28, 2018) (unpublished). A plaintiff need not "identify a particular week in which [he] worked uncompensated

8

overtime hours." Hall, 846 F.3d at 778 (emphasis omitted).

Figueroa alleges that he regularly worked 14-hour days, six days per week, with a one-hour lunch break. See Am. Compl. ¶¶ 42–45. During the holiday season, Figueroa alleges he regularly worked even longer. See id. Figueroa also alleges that Butterball promised to pay him on a piece-rate basis per load of turkeys, with "overtime for any hours worked over 40 per week." Id. ¶¶ 48–51. However, Figueroa alleges that Butterball under-calculated wages, paying Figueroa less than his promised hourly rate and failing to pay an overtime premium. See id. ¶¶ 52–57.

In contrast to the example cited in the amended complaint, see id. ¶ 57, Figueroa's paystub for January 15, 2018, to January 21, 2018, reveals gross earnings of $1,382.15. See [D.E. 17-1]. Figueroa worked 66.18 hours. See id. Figueroa earned $1,147.62 in "LoadTrip," or piece-rate, pay. See id. Divided by 66.18 hours worked, Figueroa earned an hourly rate of $17.34. Figueroa also earned $234.53 in overtime. See id. Divided by the hours of overtime worked (26.18), Figueroa earned an hourly overtime premium of approximately $8.96. Cf. 29 C.F.R. § 778.111. That overtime premium exceeds what the regulations require (i.e., $8.67 for every hour over 40). See id.

The complaint plausibly alleges that Figueroa consistently worked in excess of 40 hours per week and that Butterball knew Figueroa worked such hours, particularly during the holiday season. See Am. Compl. ¶¶ 42–45. However, Figueroa's allegations that Butterball failed to pay overtime rest on calculations based on an hourly rate, not a piece rate. See id. ¶ 57; [D.E. 19] 17. Figueroa's paystub belies Figueroa's contention that he should have been paid an hourly rate. The paystub reflects piece-rate compensation. See Am Compl. ¶¶ 48–50; [D.E. 17-1]. That Figueroa tracked his hours, from which Butterball derived an hourly rate, comports with piece-rate compensation and does not indicate an hourly pay structure. See, e.g., Alston, 254 F. Supp. 3d at 795; Gaxiola, 776 F. Supp. 2d at 124. Thus, the amended complaint does not plausibly allege that Butterball failed to

9

pay Figueroa an overtime premium. In short, the paystub negates Figueroa's claim that Butterball failed to pay an overtime premium. See [D.E. 17-1]; Goines, 822 F.3d at 166.

Alternatively, Figueroa contends that no piece-rate understanding existed between Figueroa and Butterball. See [D.E. 19] 17–19. Butterball disagrees. See [D.E. 18] 11–15.

Mere confusion about pay structure or an employer's occasional misstatement are not bases for an FLSA claim. See Griffin, 142 F.3d at 717 ("Neither the regulation nor the FLSA in any way indicates that an employee must also understand the manner in which his or her overtime pay is calculated." (alteration omitted). "[A]n employer can [] demonstrate the existence of [a] clear mutual understanding from employment policies, practices, and procedures." Id. (quotation omitted); see Monahan v. Cnty. of Chesterfield, 95 F.3d 1263, 1275 n.12 (4th Cir. 1996); Amador, 575 F. Supp. 2d at 929–30; Geise v. Brunswick Cnty., No. 7:05-CV-42-FL, 2006 WL 8439061, at *7 (E.D.N.C. Oct. 23, 2006) (unpublished). In Griffin, the court found a clear mutual understanding where employees worked under the compensation structure for six years before filing suit, their paychecks reflected the compensation structure, and the employer explained the compensation structure to the employees. See Griffin, 142 F.3d at 716–17.

Figueroa responds that Griffin is distinguishable because Griffin only dealt with FLSA claims, not FLSA and NCWHA claims. See [D.E. 19] 17. Although Griffin did not concern the NCWHA, that does not prevent Griffin's FLSA analysis from applying to Figueroa's FLSA claim.

Figueroa also contends Griffin is distinguishable because Figueroa does not allege confusion but rather alleges a clear understanding of hourly pay. See id. at 17–19. As discussed, however, Figueroa's amended complaint and paystub evince an understanding of piece-rate compensation, not hourly pay.

Figueroa fails to plausibly allege a lack of understanding of piece-rate compensation. See,

Case 5:20-cv-00585-D   Document 21   Filed 09/15/21   Page 10 of 18

e.g., Griffin, 142 F.3d at 716–17. Butterball informed Figueroa that he would be paid through piece-rate compensation with overtime. See Am. Compl. ¶¶ 47–49. Figueroa's paystub reflects this compensation structure. See [D.E. 17-1]. Figueroa worked for Butterball for approximately two years, and he filed this action over a year after leaving employment with Butterball. See Am. Compl. ¶ 19. Any confusion Figueroa may have about the role of hourly wage calculations to determine overtime in a piece-rate compensation structure does not suffice to state a claim under the FLSA. See Griffin, 142 F.3d at 716–17. Moreover, alleging written promises of hourly pay does not help Figueroa's case when he failed to allege such facts in his amended complaint. Thus, Figueroa fails to state a claim for relief under the FLSA. Accordingly, the court grants Butterball's motion to dismiss count one of the amended complaint.

## B.

Figueroa alleges that Butterball violated the NCWHA. See Am. Compl. ¶¶ 105–17. Specifically, Figueroa alleges Butterball failed to pay "all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday." Id. ¶ 111. Figueroa thus asserts a payday claim under North Carolina General Statute 95-25.6 for "all owed, earned, and accrued promised wages." Id. ¶ 108. Under its "payday" provision, the NCWHA requires employers to "pay every employee all wages and tips accruing to the employee on the regular payday." N.C. Gen. Stat. § 95-25.6. Figueroa also alleges a violation of section 95-25.13, which "requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the employment practices and policies regarding promised wages." Am. Compl. ¶¶ 109–15.

11

1.

Butterball argues that the FLSA preempts Figueroa's NCWHA payday claim. See [D.E. 18] 17–20. Preemption is based on Congress's power to "take unto itself all regulatory authority over [a given topic]." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947); see M'Culloch v. Maryland, 17 U.S. 316, 405–06 (1819). The preemption doctrine stems from the Supremacy Clause, U.S. Const. art. VI, cl. 2, and renders a state provision impotent when Congress enacts a conflicting federal provision intending to displace state law. See Maryland v. Louisiana, 451 U.S. 725, 746 (1981). A court, however, begins "with the basic assumption that Congress did not intend to displace state law." Id. at 746; see Rice, 331 U.S. at 230. Evidence of Congress's intent to preempt state law may overcome this basic assumption. Maryland, 451 U.S. at 746–47. Analyzing a statute's preemptive effect requires a court to construe the federal statute and putatively-preempted state law and then determine "whether they are in conflict." Perez v. Campbell, 402 U.S. 637, 644 (1971); see Chi. & N. W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 317–18 (1981).

Preemption may be express or implied. See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152–53 (1982); Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977); Cox v. Shalala, 112 F.3d 151, 154 (4th Cir. 1997). Federal law preempts state law in three circumstances: (1) "express preemption," where "Congress has expressly declared its intent to preempt state law"; (2) "field preemption," where Congress has "'occupied the field' by regulating so pervasively that there is no room left for the states to supplement federal law"; and (3) "conflict preemption," where "there is actual conflict between the state and federal laws." Martinez-Hernandez v. Butterball, LLC, 578 F. Supp. 2d 816, 818 (E.D.N.C. 2008); see Anderson v. Sara Lee Corp., 508 F.3d 181, 191 (4th Cir. 2007); Pinney v. Nokia, Inc., 402 F.3d 430, 453 (4th Cir. 2005); Cox, 112 F.3d at 154; Zelaya v. J.M. Macias, Inc., 999 F. Supp. 778, 781 (E.D.N.C. 1998). Whether the FLSA preempts an

12

NCWHA payday claim is a question of conflict preemption—namely, whether the NCWHA payday provision "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of" the FLSA. Martinez-Hernandez, 578 F. Supp. 2d at 819 (quotation omitted); see Mich. Canners & Freezers Ass'n v. Agric. Mktg. & Bargaining Bd., 467 U.S. 461, 469 (1984).

North Carolina provides an exemption from the overtime provision of the NCWHA for persons covered by the FLSA. See N.C. Gen. Stat. § 95-25.14(a)(1). The NCWHA exemption bars Figueroa from recovering overtime under the NCWHA. See Lima v. MH & WH, LLC ("Lima II"), No. 5:14-CV-896-FL, 2019 WL 2323865, at *2 (E.D.N.C. May 30, 2019) (unpublished) ("[T]he court's determination on summary judgment to dismiss part of plaintiff's NCWHA claim was not based upon preemption by the FLSA. It was based, rather, upon the statutory exemption in the NCWHA, [section] 95-25.14(a), and the court's interpretation of the plain language of the NCWHA. . . . [The Fourth Circuit has] not address[ed] the NCWHA overtime exemption, much less the interaction between the NCWHA overtime exemption under § 95-25.14(a) and a 'payday' claim under N.C. Gen. Stat. § 95-25.6."); see also Alejandra Batlle v. United Drug Supply, Inc., No. 1:20CV412, 2020 WL 9848460, at *11 (M.D.N.C. Dec. 2, 2020) (unpublished) (M&R) (collecting cases); Sharkey v. Fortress Sys. Int'l, Inc., No. 3:18-cv-00019-FDW-DCK, 2019 WL 3806050, at *6 (W.D.N.C. Aug. 13, 2019) (unpublished), appeal docketed, No. 20-1533 (4th Cir. May 7, 2020); Torres-Tinajero v. Alpha Constr. of the Triad, Inc., No. 1:18CV160, 2019 WL 3317351, at *3 (M.D.N.C. July 24, 2019) (unpublished); Lima v. MH & WH, LLC ("Lima I"), No. 5:14-CV-896-FL, 2019 WL 2602142, at *16 (E.D.N.C. Mar. 8, 2019) (unpublished); DeHoll v. Eckerd Corp., No. 1:18CV280, 2018 WL 5624150, at *5 (M.D.N.C. Oct. 30, 2018) (unpublished); Luna-Reyes v. RFI Constr., LLC, 109 F. Supp. 3d 744, 752 (M.D.N.C. 2015).

The FLSA only preempts state laws that provide lesser protections than the FLSA. See In

13

re Lowe's Cos., Inc. FLSA & Wage & Hour Litig., No. 5:20-MD-02947-KDB-DSC, 2021 WL 374976, at *3–7 (W.D.N.C. Feb. 3, 2021) (unpublished); Mebane v. GKN Driveline N. Am., Inc., 499 F. Supp. 3d 220, 228 (M.D.N.C. 2020); Zelaya, 999 F. Supp. at 781–82. Accordingly, to the extent Figueroa seeks relief under the NCWHA's payday provisions for something other than overtime, such "claims arising under NCWHA's payday provision are not preempted by the FLSA." DeHoll, 2018 WL 5624150, at *5; see Luna-Reyes, 109 F. Supp. 3d at 752–53; Aguilar-Gamas v. Scott Farms, Inc., No. 5:13-CV-447-FL, 2014 WL 12769404, at *3 (E.D.N.C. Jan. 6, 2014) (unpublished).

"[I]n order to bring a claim under the NCWHA payday provision, the claim must be separate and distinct from the plaintiff's FLSA minimum wage and overtime claims." DeHoll, 2018 WL 5624150, at *5; see Alejandra Batlle, 2020 WL 9848460 at *11; Lima I, 2019 WL 2602142, at *16; Laurence v. Harris Teeter, LLC, No. 3:17-CV-00602-RJC-DSC, 2018 WL 10058688, at *2–3 (W.D.N.C. Feb. 20, 2018) (unpublished) (M&R); Romero v. Mountaire Farms, Inc., 796 F. Supp. 2d 700, 710 (E.D.N.C. 2011); Hanson-Kelly v. Weight Watchers Int'l, Inc., No. 1:10CV65, 2011 WL 2689352, at *4–5 (M.D.N.C. July 11, 2011) (unpublished) (M&R); Martinez-Hernandez, 578 F. Supp. 2d at 819–20 (finding a claim for "overtime wages of one and one-half times [plaintiffs'] regular hourly rate" was "separate and distinct from plaintiffs' FLSA claims"). "A separate and distinct payday claim is one that seeks payment of accrued wages that should have been paid to the plaintiff on his payday." DeHoll, 2018 WL 5624150, at *5. A "plaintiff's NCWHA claim may proceed to the extent it seeks unpaid, earned, compensation apart from overtime pay." Lima I, 2019 WL 2602142, at *15 ("[A]llowing plaintiff to recover overtime wages under the NCWHA, through the avenue of a 'payday' claim under § 95-25.6, would render meaningless the exemption for overtime claims in § 95-25.14(a)."); see, e.g., Barton v. Pantry, Inc., No. 1:04-CV-748, 2006 WL

14

1367421, at *2 (M.D.N.C. May 17, 2006) (unpublished).

Unlike Figueroa's NCWHA payday claim for overtime, Figueroa's claim that Butterball failed to pay him a promised hourly rate is not exempt under the NCWHA or preempted by the FLSA because he asserts a claim independent of whether Butterball failed to pay overtime. See Am. Compl. ¶¶ 111, 114 (alleging defendant failed to pay "all wages, when due, for all promised earned and accrued regular, straight [wages] . . . which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday . . . . [Defendant] fail[ed] to compensate Named Plaintiff for all straight time at the promised hourly rate of $18.08 per hour"); cf. Laurence, 2018 WL 10058688, at *3–4 ("Defendant agreed to pay hourly-paid [employees] for all hours worked, as evidenced by Defendant paying them an hourly rate of pay, furnishing employees with paystubs showing their agreed hourly rates, and instructing them to use Defendant's time-keeping system in order to be paid, or not paid, for any time." (quoting complaint)). Thus, Figueroa may proceed with that NCWHA payday claim if he plausibly alleges such a separate and distinct claim.

2.

Butterball argues that Figueroa has not plausibly alleged a separate and distinct claim under the NCWHA because Figueroa does not allege that Butterball failed to pay all accrued wages on Figueroa's regular payday. See [D.E. 18] 20–21. In support, Butterball contends that Figueroa's amended complaint and paystub indicate piece-rate compensation, thereby negating Figueroa's claim that Butterball failed to pay him a promised hourly rate. See id. Figueroa responds that his paystub indicates underpayment. See [D.E. 19] 16–17.

Figueroa has not plausibly alleged an NCWHA payday claim for unpaid hourly wages. As with Figueroa's FLSA claim, the paystub reflects piece-rate compensation. See [D.E. 17-1].

15

Moreover, Figueroa's amended complaint alleges piece-rate compensation. See Am. Compl. ¶¶ 47–49. Thus, Figueroa has not stated a claim for failure to pay hourly wages under the NCWHA.

In opposition, Figueroa contends that because the FLSA's savings clause permits more stringent regulations, Figueroa has plausibly alleged an NCWHA payday claim. See [D.E. 19] 13–19. In support, Figueroa argues that Butterball "cannot rely on a piece-rate compensation system as required by 29 C.F.R. § 778.311(a) because [Butterball] violated NCWHA's legal requirements, which are more stringent and offer greater protections than FLSA." Id. at 13 (emphasis in original). Butterball replies that the NCWHA allows piece-rate compensation. See [D.E. 20] 6–7.

Butterball is correct. The NCWHA allows for piece-rate compensation. See N.C. Gen. Stat. § 95-25.2(16). FLSA-covered piece-rate workers are exempted from the overtime computation provisions of the NCWHA. See 13 N.C. Admin. Code 12.0501(c)(3); see also N.C. Gen. Stat. § 95-25.14(a)(1)(c). Moreover, as discussed, the FLSA preempts state laws that provide lesser protections than the FLSA. See In re Lowe's Cos., 2021 WL 374976, at *3–7; Mebane, 499 F. Supp. 3d at 228. The NCWHA, however, is coextensive with the FLSA regarding piece-rate compensation. See N.C. Gen. Stat. §§ 95-25.2(16), 95-25.14(a)(1)(c); 13 N.C. Admin. Code 12.0501(c)(3). Furthermore, Figueroa has not plausibly alleged that Butterball did not comply with the piece-rate compensation requirements under either the FLSA or the NCWHA. Accordingly, Figueroa has failed to state a claim under the NCWHA for failure to comply with the piece-rate compensation requirements.

Finally, Figueroa alleges Butterball violated the NCWHA's notice requirements pursuant to section 95-25.13. See Am. Compl. ¶¶ 109–17. North Carolina General Statute 95-25.13 requires an employer to (1) "[n]otify its employees, orally or in writing at the time of hiring, of the promised wages and the day and place for payment"; and (2) "[m]ake available to its employees, in writing or through a posted notice maintained in a place accessible to its employees, employment practices and

16

policies with regard to promised wages." N.C. Gen. Stat. §§ 95-25.13(1)–(2). Under the North Carolina Administrative Code:

> (a) Employers shall satisfy the notice requirements of [North Carolina General Statute] 95-25.13(2) by posting or making available to its employees in writing all policies and practices relating to promised wages in a manner, place and time which ensures that employees have ready access to those policies and practices throughout their tenure with the employer and are able to use that information.
>
> (b) Acceptable means of ensuring that the policies and practices are readily accessible to the employees include, but are not limited to:
>
> . . .
>
> > (2) Providing employees with payroll records, <u>including check stubs</u>, for wages promised in the form of hourly pay or salary or other form whose terms are readily identifiable from the payroll records.

13 N.C. Admin. Code 12.0805(a), (b)(2) (emphasis added). Furthermore, "[a]mbiguous policies and practices shall be construed against the employer and in favor of employees." 13 N.C. Admin. Code 12.0307(c).

Figueroa has not plausibly alleged a violation of section 95-25.13. Figueroa admits in his amended complaint that when Butterball hired him, Butterball orally informed him that he would be paid piece-rate compensation with overtime. See Am. Compl. ¶¶ 48–50. In doing so, Figueroa alleges actions that complied with the notice requirements of section 95-25.13, which allows for oral notice. See N.C. Gen. Stat. § 95-25.13(1). Moreover, Butterball provided its employees with access to policies and practices regarding promised wages in the statutorily-allowed form of a paystub. See [D.E. 17-1]; 13 N.C. Admin. Code 12.0805(b)(2). Furthermore, the paystub is not ambiguous. It provides for piece-rate compensation and overtime. See [D.E. 17-1]. Accordingly, Figueroa has not plausibly alleged a violation of section 95-25.13.

### III.

In sum, the court GRANTS defendant's motion to dismiss [D.E. 17], and DISMISSES

17

WITHOUT PREJUDICE plaintiff's amended complaint [D.E. 13] for failure to state a claim. The court DENIES as moot defendant's motion to dismiss [D.E. 11] and motion to strike [D.E. 17]. Plaintiff may file an amended complaint by October 4, 2021.

SO ORDERED. This 15 day of September, 2021.

JAMES C. DEVER III
United States District Judge