IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

OSVALDO FIGUEROA, on behalf of himself
and all others similarly situated,

     *Plaintiff,*

     v.

BUTTERBALL, LLC,

     *Defendant.*

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 5:20-cv-00585

**PLAINTIFF'S SECOND AMENDED
COMPLAINT**

COME NOW, Osvaldo Figueroa ("Named Plaintiff"), on behalf of himself and all others

similarly situated (collectively "Plaintiffs" or "Named and Putative Plaintiffs"), by and through

undersigned counsel, and hereby sets forth this collective action for violation of the Fair Labor

Standards Act under § 216(b), and a representative action under the North Carolina Wage and

Hour Act pursuant to Fed. R. Civ. P. 23, and alleges as follows:

## PRELIMINARY STATEMENT

1.     Named Plaintiff is a former employee of Defendant Butterball, LLC ("Defendant")

and worked as a poultry loader/catcher. Defendant has been subject to several previous lawsuits

as a result of its violative wage practices under the FLSA and state wage and hour law, including

the NCWHA. Named Plaintiff, on behalf of himself and all others similarly situated, brings this

action against Defendant for unpaid minimum wages, unpaid overtime compensation, and related

penalties and damages.

2.     This case concerns Defendant's policy and practice of failing to pay proper

overtime premiums pursuant to the FLSA and earned and accrued earned wages such as promised

wages including, but not limited to, straight and/or regular and overtime wages on their regular

pay date in violation of the NCWHA, to the individuals who catch and/or load its poultry. Defendant maintains control over the working conditions of these poultry loaders/catchers, including but not limited to setting the schedule of when they will work, the farms where they will carry out their duties, the number of poultry they can catch, and the specifications for how they catch poultry. Loaders/Catchers work long hours, typically more than twelve to thirteen hours per day, five to six days per week. The work is repetitive, arduous and often dangerous. Each loader/catcher routinely catches tens of thousands of poultry per day, sometimes in excess of a hundred thousand poultry per day. Yet, Defendant fails to pay Plaintiffs all wages as required by the FLSA and the NCWHA.

3.     Plaintiffs consist of current and former employees working as poultry Loaders/Catchers at Defendant's processing plants. It is Defendant's systemic company-wide policy and practice to willfully fail and refuse to compensate employees for all straight-time hours worked, and to pay all overtime compensation at time and one-half for all hours worked in excess of 40 in a week, due and owing to Plaintiffs and all other similarly situated employees, in direct violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

4.     This action is brought for unpaid minimum wages, unpaid overtime compensation, liquidated damages, and all related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*  During their employment, Plaintiffs worked for Defendant as poultry Loaders/Catchers in Defendant's processing plants. For their work as a Loaders/Catchers, Defendant willfully failed and refused to compensate Plaintiffs for all hours worked, including hours worked in excess of forty (40) in a week at a rate of time and one-half their regular rate, due and owing to Plaintiffs, in direct violation of the FLSA, 29 U.S.C. § 201 *et seq.*

5.     Named Plaintiff brings this action for violation of the FLSA as a collective action,

pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class:

> All individuals who worked as poultry loaders/catchers catching and/or loading Defendant's poultry, including turkeys, at Defendant's North Carolina's processing plants, and who did not receive appropriate premium overtime compensation within three years prior to the commencement of this action, through the present.

6.      Defendant is liable for its failure to pay Named and Putative Plaintiffs for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

7.      Plaintiffs who elect to participate in this FLSA collective action seek compensation for all work performed for Defendant at their appropriate straight-time rate, compensation at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

8.      Named Plaintiff also bring this action, on his own behalf, and as a representative of similarly situated current, former, or future processing plant Loaders/Catchers, employed by Defendant at its processing plants in North Carolina, under the NCWHA. Plaintiffs, who are North Carolina residents and who worked for Defendant in North Carolina, assert that they and the putative class, who work or worked in North Carolina for Defendant, are entitled to compensation for unpaid promised straight-time, premium compensation for certain hours worked in week, and all owed, earned, and/or promised wages, on their regular pay date, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

9.      Plaintiffs seek class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendant's employees in North Carolina:

> All individuals who worked as poultry loaders/catchers catching and/or loading Defendant's poultry, including turkeys, at Defendant's North Carolina processing plants, and were not compensated all promised, earned, and accrued wages,

including, but not limited to, compensation for all hours worked up to forty (40) in a week and for hours worked above forty (40) in a week at any time within two years prior to the commencement of this action, through the present.

10.     Defendant's pay practices and policies were in direct violation of the FLSA and the NCWHA.  Accordingly, Named Plaintiff, on behalf of himself and all others similarly situated, seeks unpaid straight-time compensation, unpaid owed, earned, and/or promised wages, and unpaid overtime compensation, in addition to, liquidated damages, attorneys' fees and costs, prejudgment interest, and other damages permitted by applicable law.

<u>**JURISDICTION AND VENUE**</u>

11.     The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, based upon the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

12.     Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendent state law claims under the NCWHA, because those state law claims arise out of the same nucleus of operative fact as the FLSA claims.

13.     The United States District Court for the Eastern District of North Carolina has personal jurisdiction because Defendant's primary place of business in North Carolina is in Wake County, which is located within this District.

14.     Additionally, a substantial part of the events that gave rise to this action occurred at Defendant's Warsaw turkey processing plant, located in Duplin County, North Carolina, which is also within this District.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant conducts business in the Eastern District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

16.     The claims for violations of the NCWHA are based upon the statutory law of the

State of North Carolina.

17.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

18.     The evidence establishing liability for both causes of action will be similar, and neither issue will predominate nor create confusion for a jury.

**PARTIES**

19.     Named Plaintiff is an adult resident of Clinton, North Carolina.  He worked as a poultry loader/catcher for Defendant at its Warsaw, North Carolina, location from approximately May 8, 2017 until May 2019.

20.     Defendant Butterball, LLC is a limited liability corporation, with its principal place of business located at One Butterball Lane, Garner, North Carolina 27529.

21.     Defendant is one of the largest producers of turkey products in the United States, producing and distributing over one-billion pounds of turkey each year throughout the United States and in more than thirty (30) countries.

22.     Defendant operates six (6) processing plants in North Carolina, Arkansas, and Missouri.

23.     According to its website, Defendant has over 6,000 employees throughout its six plant locations and corporate offices.

24.     The FLSA collective action Putative Plaintiffs consist of individuals who have worked for Defendant, who were non-exempt employees paid an hourly wage, and who were not properly paid overtime given Defendant's policy and practice of willfully failing and refusing to compensate Plaintiffs for all hours worked, including hours worked in excess of forty (40) in a week at a rate of time and one-half their regular rate, due and owing to Plaintiffs.

5

25.     Named Plaintiff bring this action on his own behalf and, pursuant to 29 U.S.C. § 216(b), as representative of a proposed collective action of similarly situated employees.

## **COVERAGE**

26.     At all times material to this action, Defendant has acted, directly or indirectly, in the interest of an employer with respect to Named and Putative Plaintiffs.

27.     At all relevant times, Defendant was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

28.     At all times material to this action, Named and Putative Plaintiffs were individual employees within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

29.     At all relevant times, Defendant operated as an enterprise within the meaning of 29 U.S.C. § 203(r)(1).

30.     At all times material to this action, Defendants were an enterprise engaged in commerce or the production of goods for commerce, as defined by the FLSA, 29 U.S.C. § 203(s), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

## **FACTUAL ALLEGATIONS**

31.     Upon information and belief, Defendant has more than 6,000 employees at approximately six plant locations and corporate offices throughout the United States.

32.     Named and Putative Plaintiffs were all employed as poultry Loaders/Catchers at Defendant's processing plants.

33.     Defendant engages Named and Putative Plaintiffs to catch and/or load Defendant's

poultry, such as turkey, so that they can be transported to slaughter.

34.     Named and Putative Plaintiffs worked for Defendant as Loaders/Catchers in Defendant's turkey department at Defendant's processing plant located in Warsaw, North Carolina. Named and putative Plaintiffs were a non-exempt employees.

35.     At the beginning of each shift, Named and Putative Plaintiffs arrive at Defendant's office in Warsaw, North Carolina, at which point Defendant transports Named and Putative Plaintiffs to Defendant's farm, where the turkeys were located.

36.     As a Loaders/Catchers, Named and Putative Plaintiffs' primary duties included separating and catching/loading turkeys onto trucks. Named and Putative Plaintiffs are responsible for setting up metal equipment to help guide turkeys and allow for quicker, more efficient corralling of the poultry.

37.     Named and Putative Plaintiffs did not receive specialized training to perform these duties.  The nature of Named and putative Plaintiffs' work is unskilled, repetitive, and rote.

38.     Named and Putative Plaintiffs are not engaged in raising poultry. Rather, each shift, Named and Putative Plaintiffs are exclusively responsible for catching and loading thousands of turkeys per day, separating living and dead turkeys as they catch/load the poultry.

39.     During each shift, Named and Putative Plaintiffs typically load approximately 14-16 trucks.  During the busier, holiday season, Named and Putative Plaintiffs typically load approximately 18-20 trucks per shift.

40.     Named and Putative Plaintiffs do not have any authority or discretion over the hiring and firing of other employees, nor could they effectively recommend the hiring, firing, advancement, promotion, or other change of status of other employees.

41.     Named and Putative Plaintiffs' primary duties do not include management of the

7

business or any subdivision thereof. They do not evaluate or discipline other employees, set their hours of work or rates of pay, or direct their work. Named and Putative Plaintiffs do not have the authority to discipline anyone for coming in late, leaving early, or for misbehavior while on the job. Further, Named and Putative Plaintiffs do not direct the work of two or more full-time employees and always report directly to Defendant's management, who have supervising authority over everyone, including Named and Putative Plaintiffs.

42. Defendant scheduled Named Plaintiff to work from 6:30 p.m. until approximately 9:30 a.m. the next day, six days per week. Typically, Named Plaintiff and Putative Plaintiffs work similar work schedules. In the case of Named Plaintiff, he started his week on Sunday evening and worked through Saturday morning at 9:30 a.m. of the same week. On average, once per month the machines would break down and Named Plaintiff would work until 2:00 p.m. or 3:00 p.m., waiting for machines to be repaired.

43. During each shift, Named and Putative Plaintiffs were permitted to take a one-hour, uninterrupted lunch break. However, Named and Putative Plaintiffs' ability to take a lunch break depended on the general pace of the production line—once all of the trucks had been filled and the trucks had left to deposit the poultry at the production factory, Named and Putative Plaintiffs were permitted to take a break, until the trucks returned for additional poultry loads. Accordingly, Named and Putative Plaintiffs were unable to take a break when the workflow was heavy.

44. Therefore, given Named and Putative Plaintiffs' regularly scheduled shifts, Named and Putative Plaintiffs typically worked approximately ninety (90) hours each week for Defendant.

45. From November to early February each year, Defendant requires Named and Putative Plaintiffs to work significantly more hours than their regular schedule, to meet the holiday demands. During this time period, Named and Putative Plaintiffs typically work seven days a

week for Defendant and are only permitted to take one to three days off during any given holiday season. In other words, during the holiday season, Defendant requires Named and Putative Plaintiffs to work nearly ninety (90) days straight, without a day off.

46. Defendant, in its sole discretion, controls Named and Putative Plaintiffs' work schedules and rates of pay.

47. Named and Putative Plaintiffs are predominantly Spanish speaking, with very limited English-speaking skills and are largely unable to read English.

48. Defendant compensates Named and Putative Plaintiffs each week ("Pay Period") on Fridays via check.

49. During the initial hiring process, Named Plaintiff's manager, "Rocco," alongside a representative from Defendant's Human Resources ("HR") department, who spoke Spanish and translated the terms of employment to Named Plaintiff, informed Named Plaintiff he would be paid an hourly rate and a premium rate of time and one-half his regular hourly rate for all hours over 40 per week.

50. Following this conversation, regarding hourly compensation, including overtime for hours over 40, it was Named Plaintiff's understanding he would be compensated on an hourly basis, especially since there was no proper explanation of the piece-rate compensation system in conjunction with the promise to be compensated overtime for hours worked over 40 per week, and his check stubs maintained an hourly rate.

51. There was no contract, memorandum, or other document between Named and putative Plaintiffs and Defendant properly memorializing or explaining any "load pay" or "piece rate" system.

52. Additionally, because Named Plaintiff did not document or track the number of

9

loads he filled each shift, Defendant could not properly compensate Named Plaintiff based only on a per load basis, as no record existed documenting the number of loads completed by Named Plaintiff and/or other turkey catchers/loaders.

53. As such, Named Plaintiff and Putative Plaintiffs did not agree or understand that any compensation based on piece-rate or "load pay" was determined by adding the pieces or turkeys loaded, since such information was not recorded anywhere.

54. Rather, Named Plaintiff's understood he would be compensated on an hourly basis because Defendant required Named Plaintiff to track his daily hours worked, which was recorded at the time Named and putative Plaintiffs arrived to work and ended for the day, his hourly or promised rate was demonstrated on his paystub or earning statement, and "Rocco" promised Named Plaintiff premium or overtime compensation for hours worked over 40 per week.

55. Named Plaintiff relied on this written promise of his hourly rate on his paystub, as it was consistent with the information provided to him upon hiring, in understanding for performing the turkey catcher/loader duties, he would be compensated on an hourly rate.

56. Given Defendant's promises regarding overtime compensation, Named Plaintiff's hourly rate demonstrated on his earning statement, and Defendant's timekeeping requirements, Named Plaintiff believed he would be and should have been paid time and one-half for all hours over 40 per week. Each shift, Named Plaintiff was required to use Defendant's time clock, to document the time Named Plaintiff performed work for Defendant from the minute he arrived at Defendant's Warsaw office to the minute Named Plaintiff's shift ended.

57. On the other hand, while Named Plaintiff's paystubs identify some wages as "LoadTrip," Named Plaintiff, as well as other turkey catchers/loaders, is Spanish-speaking and cannot read English. Therefore, when reviewing his paystubs, which are typed in English, Named

Plaintiff believed the hourly rate listed on his paystubs was the basis for his wage compensation and did not understand on what information "LoadTrip" calculations were based.

58.     Nevertheless, and despite only discussing an hourly compensation structure with Named and Putative Plaintiffs in Spanish, not mandating or explaining to Named and Putative Plaintiffs the proper calculation or compensation based on a piece-rate system, Named and Putative Plaintiffs were not paid properly for all hours worked, including, but not limited to, hours worked over 40 per week at time and half.

59.     Despite Defendant maintaining records that document all hours worked by Plaintiffs each pay period, Defendant systemically undercalculates Named and Putative Plaintiffs' wages.

60.     Similarly, taking into account all of the hours Named and Putative Plaintiffs work and the amounts they are paid each week, Defendant routinely pays Named and Putative Plaintiffs less than their earned wages, including less than the overtime rate required under the FLSA *and* less than their promised hourly rate for hours up to forty (40) in a week and their promised premium rate of one and one half times their promised hourly rate for hours in excess of forty (40) in a week.

61.     For example, during the pay period from January 22, 2018, to January 28, 2018, Defendant compensated Named Plaintiff $1,419.66 (gross earnings). The corresponding paystub shows Named Plaintiff earned a "LoadTrip" amount of $1,184.64 and worked a purported 70.32 hours.

62.     Named Plaintiff's compensation for this pay period, as documented on Named Plaintiff's paystub, demonstrates Defendant failed to compensate Named Plaintiff all promised earned and accrued wages, including compensation at the promised hourly rate for all hours up to forty (40) in a week and at the rate of time and one half Named Plaintiff's hourly rate for all hours

worked in excess of forty (40) in a week. As outlined on Named Plaintiff's paystub, Named Plaintiff's hourly rate at the time was $18.54. According to this promised hourly rate, and including a premium overtime rate of $27.81, Defendant should have compensated Named Plaintiff at least $1,584.80.[1] In other words, for the work Named Plaintiff performed for Defendant from January 22, 2018, to January 28, 2018, Defendant owes Named Plaintiff at least $165.14 in unpaid wages for this one week alone.

63. Defendant failed to compensate Named Plaintiff as required by the FLSA and Defendant failed to compensate Named Plaintiff pursuant to its promised compensation as required by the NCWHA.

64. Defendant has violated the statutory rights of Named and Putative Plaintiffs, under both the FLSA and the NCWHA, which resulted in damages to Named and Putative Plaintiffs in the form of unpaid promised wages, unpaid overtime premiums for all overtime work required, suffered, or permitted by Defendants, unpaid owed and promised wages, liquidated damages, attorneys' fees and costs, prejudgment interest, and other damages permitted by applicable law.

65. Defendant knowingly, willfully, or with reckless disregard carried out an illegal pattern or practice of failing to pay Named Plaintiff and those similarly situated all wages due and owing under the FLSA and the NCWHA

**FLSA COLLECTIVE ACTION ALLEGATIONS**

66. Named Plaintiff brings the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all similarly situated employees.

---

[1] This number was derived by summing Named Plaintiff's Straight Time Wages, or his promised hourly rate multiplied by 40 ($18.54 x 40 = $741.60), and Named Plaintiff's promised premium compensation for hours over forty (40), or the promised premium rate of one- and one-half times Named Plaintiff's promised hourly rate multiplied by hours worked in excess of forty ($27.81 x 30.32 = $843.20).

67.     Plaintiffs desire to pursue their FLSA claim on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

68.     Similarly situated employees, for purposes of the FLSA collective action claim, include:

> a.  All individuals who worked as poultry loaders/catchers catching and/or loading Defendant's poultry, including turkeys, at Defendant's processing plants, and who did not receive proper overtime compensation at any time within three years prior to the commencement of this action, through the present.

69.     Putative Plaintiffs are current and/or former employees of Defendant who have been subject to the same alleged unlawful practices, and therefore, are similarly situated to Named Plaintiff.  The members of the collective action, like Named Plaintiff, were employed as Loaders/Catchers, and were subject to the same or similar pay practices.  These Putative Plaintiffs, like Named Plaintiff, were not paid at the legally required minimum wage and/or overtime rate of time and one-half for hours worked over forty (40) in a single workweek.  Named and Putative Plaintiffs should therefore be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

70.     Named and Putative Plaintiffs performed the same type of work, the manner and terms of which were controlled by Defendant, and were not paid on an hourly basis. Defendant failed to pay minimum wage and overtime as required by federal law.

71.     The similarly situated employees are known to Defendants, are readily identifiable, and may be located through Defendant's records.

72.     Defendant employs many collective members throughout North Carolina.  These similarly situated employees may be readily notified of this action through direct U.S. mail and/or

other appropriate means and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

73.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Named and Putative Plaintiffs.

74.     Named Plaintiff requests that he be permitted to serve as representative of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

75.     Pursuant to 29 U.S.C. § 216(b), attached to and filed with the initial Complaint as Exhibit 1, Consent to File Suit as Named Plaintiff executed by Plaintiff. *See* Dkt. 1-3.

## NCWHA CLASS ACTION ALLEGATIONS

76.     Named Plaintiff brings the Second Count of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and all similarly situated employees, for relief to redress and remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, *et seq.*

77.     Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Named and Putative Plaintiffs/Rule 23 class members.

78.     Named Plaintiff and members of the proposed class assert that Defendant violated the NCWHA by failing to pay its employees promised straight-time wages, and/or overtime wages of one and one-half times their regular rate of pay, which are part of the employees' accrued, earned, and promised wages, and should have been paid when due on the employees' regular payday; this requirement is not covered by the minimum wage or overtime provisions of the FLSA.

79.     <u>The Proposed Class</u>: Similarly situated employees, for purposes of the NCWHA

14

class action claim, include:

    a.  All individuals who worked as poultry loaders/catchers catching and/or loading Defendant's poultry, including turkeys, at Defendant's North Carolina processing plants, and were not compensated all promised, earned, and accrued wages, including, but not limited to, compensation for all hours worked up to forty (40) in a week and for hours worked above forty (40) in a week at any time within two years prior to the commencement of this action, through the present.

80.   <u>Numerosity</u>: The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Named Plaintiff at this time, upon information and belief, the class comprises at least forty (40) persons.

81.   <u>Common Questions Predominate</u>: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that Named Plaintiff and all members of the proposed class have been harmed by Defendants' failure to pay earned wages. The common questions of law and fact include, but are not limited to, the following:

    a.  Whether Defendant failed to pay Named and Putative Plaintiffs/Rule 23 class members all of their earned and accrued wages, including, but not limited to, any promised straight-time or promised premium wages for hours over forty, on their regular pay date, pursuant to N.C. Gen. Stat. § 95.25.6;

    b.  Whether Defendant compensated Named and Putative Plaintiffs for all of their hours worked; and

82.     Typicality: The claims of Named Plaintiff are typical of the claims of each proposed class member, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions.  All putative class members were subject to the same compensation practices of Defendant, as alleged herein, of failing to pay employees all of their earned and accrued wages pursuant to N.C. Gen. Stat. § 95-25.6.  Defendant's compensation policies and practices affected all putative class members similarly.  Named Plaintiff and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

83.     Adequacy of Representation: Named Plaintiff is able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Named Plaintiff and members of the proposed class.  Named Plaintiff has retained counsel who is experienced and competent in both wage and hour law and complex class action litigation.

84.     Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all class members is impracticable.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The cost to the court system and the public for the adjudication of

individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

85. <u>Public Policy Considerations</u>: Defendant violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

**<u>COUNT ONE</u>**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 207**
**(Failure to Pay Proper Overtime Wages)**

86. Named Plaintiff incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

87. Named Plaintiff and those similarly situated are or were employed by Defendant to perform labor and/or other duties that do not satisfy the tests for exempt positions under the FLSA.

88. At all relevant times, Defendant was, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

89.     At all relevant times, Defendant employed, and continues to employ, "employee[s]," including Named and Putative Plaintiffs, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

90.     At all relevant times, Defendant has had gross operating revenues in excess of $500,000.

91.     The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendant, to compensate all non-exempt employees at the applicable minimum wage rate for all hours worked, and at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

92.     At all relevant times, Named and Putative Plaintiffs were covered employees pursuant to the FLSA and jointly employed by Defendant within the meaning of 29. U.S.C. § 203(e)(1).

93.     Named and Putative Plaintiffs are not exempt from the requirements of the FLSA.

94.     Named and Putative Plaintiffs are entitled to be paid overtime and compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

95.     During the relevant time period, Named and Putative Plaintiffs regularly worked more than forty (40) hours per week.  Therefore, Named and Putative Plaintiffs were entitled to be paid one- and one-half times their regular rate for each hour worked in excess of forty (40) per week.

96.     However, as a result of Defendant's policy of not compensating Named and Putative Plaintiffs for all hours worked, including at a rate of one-and-one-half times their regular hourly rate for all hours over forty (40), Defendant did not compensate Named and Putative Plaintiffs for all hours worked as required by the FLSA.

97.     As Named and Putative Plaintiffs' "time in" and "time out" entries are documented on Named and Putative Plaintiffs' timesheets, Defendant was aware of all hours worked by Named and Putative Plaintiffs and that they were not receiving compensation for all hours worked, including the premium overtime rate for qualifying hours.

98.     Defendants' actions, policies, and/or practices described herein therefore violate the FLSA, 29 U.S.C. § 207, by regularly and repeatedly failing to compensate Named and Putative Plaintiffs for all hours worked, including compensation at the applicable overtime rate for all hours worked in excess of 40 per week.

99.     Named and Putative Plaintiffs are entitled to back wages at a rate of at least one- and one-half (1.5) times their regular rate of pay.

100.    Defendant's unlawful pay practices of intentionally failing to compensate Named and Putative Plaintiffs for all hours worked is in direct contrast to the express language of the FLSA, and Defendant's refusal to correct its practices even upon prior lawsuits allege violations of the FLSA.  Accordingly, Defendant is unable to defend its failure to pay overtime wages as having been done in good faith, entitling Named and Putative Plaintiffs to liquidated damages under 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

101.    Named Plaintiff, on behalf of himself and all current and/or former employees similarly situated, seeks recovery of his attorneys' fees and costs to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

**THE THREE-YEAR STATUTE OF LIMITATIONS SHOULD APPLY TO THIS CASE BECAUSE THE NON-PAYMENT OF OVERTIME IN VIOLATION OF 29 U.S.C. § 207(a)(1) WAS WILLFUL**

102.    Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

103.     Upon information and belief, Defendant knowingly and willfully failed to pay Named and Putative Plaintiffs all owed overtime wages, in violation of the FLSA.

104.     The three-year provision of 29 U.S.C. § 255(a) should apply in this case because the violation of 29 U.S.C. § 207(a)(1) was willful.  Despite tracking all hours worked through a timekeeping system, requiring Named and Putative Plaintiffs to clock in and out for each shift, Defendant maintained a practice of not compensating Named and Putative Plaintiffs for all hours worked at the appropriate premium overtime rate.  Defendant required Named and Putative Plaintiffs work hours in excess of forty hours per week but would not document such hours on Named and Putative Plaintiffs paystubs.

105.     Defendant has long been on notice that poultry Loaders/Catchers like Named and Putative Plaintiffs must be paid overtime and minimum wage.

106.     The Supreme Court in *Holly Farms corp. v. N.L.R.B.* affirmed the National Labor Relations Board's decision that chicken catchers were subject to the FLSA and were not exempt from overtime compensation. 116 S. Ct. 1396, 1405-06 (1996). The *Holly* decision put the poultry industry, including Defendant, on notice that poultry loaders should be paid for all hours worked at least minimum wage, and at time-and-a-half for all hours over forty (40) in a workweek.  *See Heath v. Perdue Farms, Inc.*, 87 F. Supp. 2d 452, 462 (D. Md. 2000).

107.     Similarly, the Department of Labor has frequently inquired into the pay practices at poultry companies, such that they should be on notice of their federal wage and hour obligations. In 2000, the United States Department of Labor ("DOL" found that 100% of the fifty-one (51) poultry plants surveyed had not paid employees for all hours worked, and 65% of the plants had misclassified workers as exempt. Kimberly D. Krone, *And You Don't Get Paid for That: Section 203(o) of the Fair Labor Standards Act Does Not apply to Donning and Doffing of Safety Gear*, 9

Seton Hall Cir. Rev. 35, 72-73, n. 35 (2012).

108. More specifically, though, Defendant has regularly been subjected to litigation regarding its frequent and various violations of federal and state wage and hour law. *See Martinez-Hernandez v. Butterball, LLC*, No. 5:07-CV0174-H (2) (E.D.N.C. 2007); *see also Helmert v. Butterball, LLC*, No. 4:08-cv-00342-JLF (E.D. Ark. 2008).

109. Despite prior lawsuits and investigations, Defendant continued to short Named and Putative Plaintiffs compensation for all hours worked.

110. The foregoing conduct, as alleged above, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a), permitting the recovery of unpaid wages for up to three (3) years, rather than two (2) years.

### SECOND CAUSE OF ACTION
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.1, *et seq*.**

111. Named Plaintiff incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

112. The class period for this cause of action is at least two years from the date of the filing of this Complaint.

113. At all relevant times, Defendant employed, and/or continues to employ, Named and Putative Plaintiffs/Rule 23 class members within the meaning of the NCWHA.

114. Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and accrued promised wages, on the employee's regular payday.

115. Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the

employment practices and policies regarding promised wages. *See* N.C. Gen. Stat. § 95-25.13(1)-(2).

116. 13 N.C. Admin. Code 12 § .0307(c) provides that any ambiguous policies and practices with respect to bonuses, commissions, and other forms of wage calculation "shall be construed against the employer and in favor of employees."

117. Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendant was required to pay Named and Putative Plaintiffs/Rule 23 class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.

118. Specifically, N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a) and 95-25.13(1)-(2) permit employees to recover *all* <u>unpaid</u> wage payments that were not timely paid when due, whether for straight-time, overtime, or other compensation, because such amounts were not paid by the promised payday date disclosed under N.C. Gen. Stat. § 95-25.13(1)-(2).

119. Defendant intentionally refused to pay all wages due as set forth in the preceding paragraphs of this Complaint to Named Plaintiff and proposed class members, in violation of the NCWHA.

120. For example, as documented on Named Plaintiff's paystubs, Defendant promised Named Plaintiff an hourly rate of approximately $18.08 an hour, and up to $18.54 an hour, plus a premium rate of time and one half the regular rate for hours over 40 per week.

121. Defendant intentionally refused to pay all wages due as set forth in the preceding paragraphs of this Complaint to Named and Putative Plaintiffs/Rule 23 class members including

failing to compensate Named Plaintiff for all straight time at the promised hourly rate of $18.08 per hour, and at the promised premium overtime rate of $27.12 per hour, in violation of the NCWHA.

122. The foregoing conduct, as alleged, constitutes willful violations of the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6.

123. As set forth above, under the NCWHA, Named Plaintiff and members of the proposed class have sustained losses and lost compensation as a proximate result of Defendant's violations.

124. As a result of these actions of Defendant, the named plaintiffs and the members of the class have suffered damages in the form of the loss of timely paid wages when all of those wages were due on their regular weekly payday, interest on those unpaid, weekly wages from when payment of all those wages were due, on the regular weekly payday of the named plaintiffs and members of the class, and liquidated damages on those unpaid weekly wages when they all were due that may be recovered under NC Gen Stat 95-25.6, 25.22(a), and (a1).

125. Accordingly, Named Plaintiff, on behalf of himself and all those similarly situated, seek damages in the amount of their unpaid earned compensation, liquidated damages, plus interest at the legal rate set for in N.C. Gen. Stat. § 95-25.22(a) and (a)(1).

126. Named Plaintiff, on behalf of himself and all those similarly situated, also seeks recovery of his attorney's fees as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(d).

## **PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiff and all those similarly situated, collectively pray that this Honorable Court:

1.      Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiff as a representative of all those similarly situated under the FLSA collective action;

2.      Issue an Order certifying this action as a class action under the NCWHA, and designate Named Plaintiff as a representative on behalf of all those similarly situated of the NCWHA classes;

3.      Award Named Plaintiff and all those similarly situated actual damages for unpaid wages and liquidated damages equal in amount for the unpaid compensation found due to Named Plaintiff and the class as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a), (a1), and pursuant to the FLSA, 29 U.S.C. § 216(b);

4.      Award Named Plaintiff and all those similarly situated pre- and post- judgment interest at the statutory rate, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a), and pursuant to the FLSA, 29 U.S.C. § 216(b);

5.      Award Named Plaintiff and all those similarly situated attorneys' fees, costs, and disbursements, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(d), and pursuant to the FLSA, 29 U.S.C. § 216(b); and

6.      Award Named Plaintiff and all those similarly situated further legal equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Named Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted, October 4, 2021.


*/s/ Gilda Adriana Hernandez*

Gilda A. Hernandez (NCSB No. 36812)
Charlotte Smith (NCSB No. 53616)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Phone: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 4, 2021, a true and correct copy of the foregoing **PLAINTIFF'S**

**FIRST AMENDED COMPLAINT** was delivered via the CM/ECF system to the following:

Theresa M. Sprain, NCBS No. 24540
**WOMBLE BOND DICKINSON (US) LLP**
555 Fayetteville Street, Suite 1100
PO Box 831
Raleigh, North Carolina 27601
Telephone: (919) 755-2104
Facsimile: (919) 755-6785
E-mail: Theresa.Sprain@wbd-us.com

Patricia I. Holliman, NCBS No. 50775
**WOMBLE BOND DICKINSON (US) LLP**
1 West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3545
Facsimile: (336) 726-9045
Email: Patricia.Holliman@wbd-us.com

*Attorneys for Defendant*

/s/ *Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Charlotte Smith (NCSB No. 53616)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Dr. Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

*Attorneys for Plaintiff*

26