IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| OSVALDO FIGUEROA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BUTTERBALL, LLC,<br><br>Defendant. | Case No.: 5:20-cv-00585-D<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** |

Butterball seeks a protective order (i) prohibiting inquiries into hypothetical claims of individuals who are not participating in this action; (ii) striking topics from Plaintiff's Rule 30(b)(6) deposition notice that are disproportionate to relevant issues in dispute, call for privileged information, or are not reasonably particular; and (iii) instructing Plaintiff's counsel that the scope of any Rule 30(b)(6) deposition is limited to the topics for which the witness is designated.

In sum, Butterball asks the Court to approve the scope of discovery contemplated by the Parties' Rule 26(f) report. (Dkt. 50 at 2.) However, Plaintiff is seeking discovery exceeding his claims or the claims of anyone else participating in this action.

Butterball sought to meet and confer with Plaintiff. As set forth in greater detail below, Plaintiff's counsel responded by citing legal authorities supporting Butterball's position, and by confirming she would ask deposition questions outside the Rule 30(b)(6) topics.

## FACTUAL AND PROCEDURAL HISTORY

**Case Background.**

This is a single-claim case for overtime pay under the Fair Labor Standards Act. Plaintiff Osvaldo Figueroa ("Plaintiff" or "Figueroa") previously asserted a variety of other claims, but each has been abandoned or dismissed. (Dkt. 21 (noting abandoned claims); Dkt. 32 (dismissing claim).) Plaintiff brings his action as a putative "collective action." The Parties have met and conferred about the terms for conditional certification and have agreed on general terms without any party asserting the need for certification-related discovery. (*See* Dkt. 55.)

As of this Motion, this action has not been conditionally certified. Only one other individual has "opted in." (*See* Dkt. 16.1.)

There are two factual disputes on the merits: (1) whether Butterball informed Figueroa his pay was on a "piece-rate" system (*See* Dkt. 32 at 13-14) and (2) whether Butterball properly calculated Figueroa's overtime premiums.

**The Parties' Rule 26(f) Agreements.**

The Parties participated in a Rule 26(f) conference, resulting in a jointly filed report identifying ten topics for "Phase I" discovery. (Dkt. 50 at 2.) Phase I does not include claims of "putative plaintiffs" but is focused on "Plaintiff and any opt-in plaintiffs." (*Id.* at 3rd, 6th, 7th, 8th, and 10th bullets.)

The Parties also conferred about a proposed collective action definition, agreeing to the following:

> All individuals who were employed by Defendant and worked as poultry loaders/catchers catching and/or loading Defendant's poultry, to be transported to Defendant's Mount Olive, North Carolina plant for processing, whose employment records reflect that they worked more than 40 hours in a week between November 4, 2017 through the date on which the Court orders conditional certification.

(Dkt. 54-1 at 3.) Plaintiff filed one motion for conditional certification prior to this agreement, and another motion after the agreement. (Dkt. 44; Dkt. 57.) Both motions remain pending.

**Plaintiff's Discovery Requests and the Parties' Meet and Confer Efforts**

On January 12, 2023, Figueroa served discovery requests, including interrogatories, document requests, and a Rule 30(b)(6) deposition notice . (Anderson Decl. ("Decl.") Exh. 1, Exh. 2, Exh. 3.) Each stated:

> "Plaintiffs" shall refer to Named Plaintiff, Opt-in Plaintiff, and putative plaintiffs who were similarly situated to

3

> Named Plaintiff, including, but not limited to, all individuals who were, are, or will be employed by Defendant as poultry loaders/catchers catching and/or loading Defendant's poultry, including turkeys, at Defendant's North Carolina's [sic] processing plants, and who did not receive appropriate premium overtime compensation within three years prior to the commencement of this action, through the present.

(*Id.*) Likewise, many of the requests called for information about Butterball employees sought this information as to "Plaintiff and those similarly situated to Plaintiff, opt-in and/or putative plaintiffs." (*See generally*, *id.*)

During meet-and-confer efforts about Plaintiff's Rule 30(b)(6) topics, Plaintiff's counsel expressed that Plaintiff expected Butterball to provide detailed employment-related information for every "putative plaintiff" regardless of whether that individual had opted in. (Decl. ¶ 9.) This includes not just the identities of the "putative plaintiffs," but also detailed information about their employment history and pay. (*E.g.*, Decl. Exh. 3 at Request Nos. 2, 10.) Butterball therefore stated concern that discovery is not appropriate into the hypothetical claims of employees who have not joined.

In addition, Plaintiff's counsel suggested she would ask questions about a corporate representative's personal knowledge, regardless of the relationship between the question and the Rule 30(b)(6) topics; and that, if Butterball designated different representatives regarding different topics, Plaintiff's counsel would ask

4

questions about topics *other than* those for which that representative was designated. (Decl. ¶ 12.) Plaintiff's counsel expressed she was uninterested in removing, modifying, or clarifying any of the Rule 30(b)(6) topics. (Decl. ¶ 13.)

Butterball therefore objected and provided Butterball's position regarding the proper scope of discovery. (Decl. ¶ 12.) Among other items, Butterball pointed out that the Rule 26(f) report did not identify discovery related to "putative plaintiffs." (*Id.*)

Butterball also wrote that the tactics suggested by Plaintiff's counsel were indicative of improper and bad faith discovery:

> *We therefore ask that you confirm that (i) you do not intend to ask questions at a 30(b)(6) deposition that go beyond the topics governing that deposition; and (ii) you do not intend to ask questions of a 30(b)(6) witness related to topics for which that witness has not been designated.*

(Decl. Exh. 5.)

Plaintiff's counsel responded on February 15, 2023, reiterating Plaintiff's position. (*Id.,* Exh. 6 at 2.) Plaintiff's counsel wrote that she expected Butterball to answer Rule 30(b)(6) deposition questions "regardless of which topics the deponent has been designated." (*Id.* at 3.)

# ARGUMENT

I. **A Protective Order Is Necessary to Limit Discovery to Those Claims that Are Actually Asserted.**

Discovery is limited to matters "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This Motion requires the Court to confirm the meaning of the word "party" for purposes of an FLSA collective action.

Putative FLSA plaintiffs who have not opted into the case are not party-litigants, but "become parties to a collective action <u>only</u> by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (emphasis added); *see also Simmons v. United Morg. And Loan Inv. LLC*, 634 F.3d 754, 758 (4th Cir 2011) (quoting 29 U.S.C. § 216)).

For this reason, the Parties agreed in their 26(f) report to focus discovery on "Plaintiff and any opt-in plaintiffs," without any suggestion of discovery into "putative plaintiffs." (Dkt. 50 at 2.)

There is no litigation-related need for the information Plaintiff seeks. Butterball did not oppose conditional certification, nor has any lack of information inhibited Plaintiff from filing multiple certification motions. (Dkt. 44; Dkt. 57.) The existence of Plaintiff's two pending conditional certification motions indicates this information is not for conditional certification purposes.

6

Figueroa cites a number of cases supporting his position, but these citations are inapplicable, or actually support Butterball's position.

The cases cited by Figueroa are inapplicable in the following ways:

1. Each case was, at least in part, a Rule 23 class action, and thus not subject to the principle that the scope of the case "only" expands plaintiffs opting in. *E.g., Wymer v. Huntington Bank Charleston, N.A.*, No. 3:10-cv-00865, 2011 WL 13228294 (S.D.W.V. May 19, 2011) (not an FLSA case); *Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ.3176(RMB)(FM), 2011 WL 1742109 (S.D.N.Y. Jan. 5, 2011) (not an FLSA case). This case is not a Rule 23 class action.

2. In one case, conditional certification had already been granted at the time of the motion[1], and the Court had already ordered the production of information regarding the identities of other employees before any discovery dispute. *See Myers v. Loomis Armored US, LLC*, 3:18-cv-00532-FDW-DSC (Dkt. 37 (granting conditional certification and ordering production of identifying information).)

3. In several cases, the defendant projected it would oppose certification, and the litigants therefore agreed to certification-related discovery. *Barton v. The*

---

[1] Plaintiff's counsel's claim is not supported, as the *Myers v. Loomis* decision is distinguishable for the reasons described above.

7

*Pantry, Inc.*, No. 1:04CV00748, 2006 WL 256462 (M.D.N.C. Aug 31, 2006). Here, Plaintiff decided to seek conditional certification prior to any discovery; he cannot now seek discovery by claiming he needs additional facts.

Several cases Plaintiff identifies actually support Butterball's position. For instance:

- In *Mondragon v. Scott Farms, Inc.*, the court limited the pre-certification discovery, holding that the production of communications between the employer and its employees would be limited to "communications between Scott and the <u>named</u> Plaintiffs," and stating that broader discovery could only be had "if the court certifies any of the proposed classes." *See* 329 F.R.D. 533, 542 (E.D.N.C. 2019) (emphasis added). The Court also stated that there was no reason for a plaintiff to seek discovery to support a certification motion when a certification motion was already filed. *Id.*.

- In *Barton*, the Court ordered that the employer likely would need to produce the "names and addresses of putative class members," but delayed ordering this production "until the Court rules on Plaintiffs' anticipated motion for

conditional certification of FLSA claims." No. 1:04CV00748, 2006 WL 256462, at *2.[2]

Butterball's proposals are consistent with the approaches of the *Mondragon* and *Barton* courts. (*See* Decl. Exh. 7 at 4-5 (initial disclosure stating that Butterball "will comply with any Court order regarding the identification of other employees").

While Plaintiff's counsel's letter claims that she has "fought and won on this issue before," Plaintiff's counsel has previously filed motions to compel seeking narrower subsets of information regarding putative plaintiffs, and those motions were rejected. *Velasquez-Monterrosa v. Mi Casita Restaurants, et al*, No. 5:15-CV-448-BO, 2015 WL 1965500 (E.D.N.C. May 1, 2015).[3] Judge Gates's order noted that the disclosure of employee information outside the conditional certification process "presents the risk of recruitment of class members outside the bounds of court supervision and, at this point, unjustified intrusion on the

---

[2] Figueroa has not requested identification of employees with direct knowledge of Figueroa's employment. Even if identification of these potential witnesses were appropriate, Butterball has already identified several individuals most likely to have relevant evidence as "witnesses.". (Decl. Exh. 7 at 3-4.)

[3] *See also Pontones v. San Jose Restaurant Incorporated*, 5:18-CV-219-D, 2019 WL 1548897, at *3 (E.D.N.C. Apr. 9, 2019) (similar).

9

employees' privacy." *Id.* at *8. Judge Gates noted that the issue would be more properly raised "after the ruling on [plaintiff's] motion for certification." *Id.*

Last, even if the Court believed Plaintiff could properly seek a narrow set of contact information, none of Plaintiff's proffered authorities support discovery into the merits for an employee who has not opted into the case. Even if the <u>identities</u> of putative plaintiffs should be produced, the Court should still enter a protective order prohibiting Plaintiff's counsel from delving into the merits of claims that have not been asserted, or any other information beyond identifying information.

For these reasons, the Court should enter an order limiting the scope of Phase I discovery to those facts relevant to whatever claims Figueroa (and opt-in plaintiff Francisco Vasquez) may personally assert.

**II.     Various Topics Within Plaintiff's Deposition Notice Either Call for Unreasonable Discovery or Do Not Provide Butterball Reasonable Notice.**

In addition, the Deposition Notice contains several additional impermissible topics. Specifically:

A. Topic 5 asks about Butterball's responses to previous litigation. This topic is plainly designed to seek information protected by the attorney-client privilege and the work product doctrine.[4]

---

[4] Butterball also believes, after reasonable inquiry, that there is no responsive information. The only litigation Plaintiff identified in the Complaint as potentially

10

Case 5:20-cv-00585-D   Document 67   Filed 03/03/23   Page 10 of 17

B. Topic 8 relates to "variation in the compensation practices applied to Plaintiff, opt-in Plaintiffs, and/or putative Plaintiffs." This topic appears to only relate to the differences in the employment between Mr. Figueroa and other "putative plaintiffs." For the reasons described in Section I, *supra*, discovery into facts regarding "putative plaintiffs" is inappropriate, rendering this entire topic inappropriate.

C. Topic 9, which calls for unspecified information regarding each of Butterball's affirmative defenses, is overly broad and does not describe "with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). Similar requests have been considered and rejected by other Courts. *Federal Trade Commission v. Adept Management Inc.*, No. 1:16-cv-00720-CL, 2018 WL11415859 (D. Or. Apr. 19, 2018) (precluding topic regarding "all facts and evidence, including documents, which support the contentions of the FTC in the Complaint" and collecting cases); *Kinetic Concepts, Inc. v. Convatec Inc.*, 268 F.R.D. 255, 263 (M.D.N.C. 2010) (the plaintiffs' purported need did not warrant "a Rule 30(b)(6) deposition on *all* Defendants' defenses and counterclaims").

---

relevant was a lawsuit filed in or around 2007 and 2008. (*See* Dkt. 22 ¶ 108.) The topics are limited to the time between 2017 and the present.

11

Butterball therefore requests a protective order specifying that any Rule 30(b)(6) deposition be limited to the remaining topics.

### III. A Protective Order Is Necessary to Prevent Plaintiff's Counsel from Abusing the Rule 30(b)(6) Deposition Procedures.

A protective order is also necessary to ensure the proper conduct of a Rule 30(b)(6) deposition. During meet and confer efforts, Plaintiff's counsel stated that she viewed the parameters of the Rule 30(b)(6) topics to be irrelevant because she did not see herself as constrained by the topics. (Decl. ¶ 13.) Butterball therefore asked Plaintiff's counsel to confirm (1) that she did not intend to ask questions beyond the topics in the Rule 30(b)(6) notice and (2) that she did not intend to ask questions of one Butterball witness relating only to topics for which a different representative was designated. (Decl. Exh. 5.) Plaintiff's counsel refused, instead stating that Butterball's representatives should respond to questions "regardless of which topics the deponent has been designated."[5] (Decl. Exh. 6.)

It is true that a privilege objection is ordinarily the only basis for refusing to respond to a question when all parties are acting in good faith. Yet courts have

---

[5] The correspondence also reveals different views regarding meet and confer obligations. While Butterball left the telephone conference believing that Plaintiff did "not wish to meet and confer on the contents of the Rule 30(b)(6) notice," Plaintiff's counsel stated that she viewed the meet and confer obligation as already fulfilled. (*Compare* Decl. Exh. 5 at 4 *with* Decl. Exh. 6 at 3.)

adopted protective orders limiting the testimony to the pre-defined Rule 30(b)(6) topics as a precautionary measure to avoid future discovery disputes. *See Lutes v. Kawasaki Motors Corp., USA*, No. 3:10CV1549 WWE, 2014 WL657712, at *2 (D. Conn. Feb. 20, 2014) ("the more sound approach is to adopt the view that a 30(b)(6) examination should be confined to matters stated with reasonable particularity in the notice of deposition."); *see also Blair v. H.K. Porter Co., Inc.*, No. 85-4278, 1986 WL 9593, at *3 (E.D. Penn. Aug. 29, 1986) ("As a cautionary measure and in order to avoid any further delays in this matter, the Court likewise rules that since plaintiff has opted to employ the procedures of Rule 30(b)(6) . . . that party must confine the examination to the matters stated").

Here, Plaintiff's counsel's comments suggest she intends to confuse the Rule 30(b)(6) deposition with depositions of witnesses testifying from personal knowledge. The time required to prepare for depositions will be unduly burdensome if Plaintiff's counsel is asking Butterball's witnesses to anticipate questions regarding (i) the topics for which that representative is designated, (ii) the topics for which the representative is not designated; (iii) any other topic within the representative's personal knowledge; and (iv) every other question Plaintiff's counsel might ask. This will lead to inevitable confusion of the witness, and inevitable confusion and disagreements between the Parties during and after the

13

deposition. For instance, if Plaintiff's counsel proceeds as described, the likely consequences include:

- Objections about whether answers were made questions in the witnesses' personal capacities or as statements of Butterball;
- Objections about the meaning of topics for which Butterball sought clarification, but that clarification was not provided;[6]
- Disputes about whether questions comply with any order the Court may issue as a result of the other aspects of this Motion; and
- Disputes about whether Plaintiff could later seek additional depositions of the Butterball representatives "in their personal capacities."

If the deposition proceeds without a limiting instruction to Plaintiff's counsel, the Court would surely be faced with additional discovery motions raising one or more of these disputes. The Court may even be faced with a Rule 30(d)(3) motion to terminate the deposition. Instructions from the Court now regarding the proper conduct of the deposition are warranted to eliminate the likelihood of further delays and disputes.

---

[6] (*See* Decl. ¶ 10(f), 10(g), 10(h).)

## CONCLUSION

For these reasons, the Court should enter an order: (i) limiting the scope of discovery to the claims of named plaintiff and opt-in plaintiff(s); (ii) limiting Plaintiff's Rule 30(b)(6) deposition notice to topics 1, 2, 3, 4, 6, 7, and 10; (iii) ordering Plaintiff's Counsel to limit deposition questions during any Rule 30(b)(6) deposition to the designated topics.

This the 3rd day of March, 2023.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Scott D. Anderson
Theresa M. Sprain, NCSB No. 24540
Scott D. Anderson, NCSB No. 49044
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Telephone: (919) 755-2104
Facsimile: (919) 755-6785
E-mail:    Theresa.Sprain@wbd-us.com
           Scott.d.anderson@wbd-us.com

*Attorneys for Butterball*

# CERTIFICATE OF WORD COUNT

I certify that this document complies with the applicable word limit provided in Local Rule 7.2(f)(3), and contains fewer than 2,800 words, excluding the parts of the document that are exempted by Rule 7.2(f)(3). This certificate was prepared in reliance on the word count feature of the word processing software used to prepare this document.

This the 3rd day of March, 2023.

/s/ Scott D. Anderson
Scott D. Anderson

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following counsel of record:

> Gilda A. Hernandez
> Matthew Wright
> Hannah B. Simmons
> The Law Offices of Gilda A. Hernandez, PLLC
> Gherndandez@gildahernandezlaw.com
> MWright@gildahernandezlaw.com
> hsimmons@gildahernandezlaw.com

This the 3rd day of March, 2023.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Scott D. Anderson
Scott D. Anderson

*Attorney for Defendant*